1

2

3                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF WASHINGTON
4

5   GINGER KAY SPANETTI,              )
                                      )   No. CV-09-0229-CI
6              Plaintiff,             )
                                      )   ORDER DENYING PLAINTIFF'S
7   v.                                )   MOTION FOR SUMMARY JUDGMENT
                                      )   AND DIRECTING ENTRY OF
8   MICHAEL J. ASTRUE, Commissioner   )   JUDGMENT FOR DEFENDANT
    of Social Security,               )
9                                     )
               Defendant.             )
10  ─────────────────────────────────  )

11      BEFORE THE COURT are cross-Motions for Summary Judgment (Ct.

12  Rec. 17, 20.) Attorney Donald C. Bell represents Plaintiff; Special

13  Assistant United States Attorney Willy M. Le represents Defendant.

14  The parties have consented to proceed before a magistrate judge.

15  (Ct. Rec. 6.) After reviewing the administrative record and briefs

16  filed by the parties, the court **DENIES** Plaintiff's Motion for

17  Summary Judgment, and directs entry of judgment for Defendant.

18                            **JURISDICTION**

19      On October 3, 2006, Ginger Spanetti (Plaintiff) protectively

20  filed an application for Supplemental Security Income benefits

21  (SSI). (Tr. 84-86.) She alleged disability due to porphyria cutanea

22  tarda (PCT) initially, and depression during appeal proceedings.

23  (Tr. 108, 134.) She alleged she was unable to work due PCT as of

24  September 1, 2000. (Tr. 108.) The onset date was amended to August

25  1, 2003, at the hearing. (Tr. 13.) Benefits were denied initially

26  and on reconsideration. Plaintiff requested a hearing before an

27  administrative law judge (ALJ), which was held on January 15, 2009,

28  before ALJ R. S. Chester. (Tr. 8-34.) Plaintiff, who was represented

by counsel, and vocational expert Tom Moreland (VE) testified. The ALJ denied benefits on February 11, 2009, (Tr. 40-50) and the Appeals Council denied review. (Tr. 51-53.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 50 years old with three adult children. She was living alone in a trailer on her step-father's property. (Tr. 246-47.) Plaintiff reported a tenth-grade education and certification as a nurse's assistant. (Tr. 12.) She has past work experience as a house cleaner, sod layer, food server, agricultural sorter, orchard laborer, and in-home care giver. (Tr. 24-25.) Plaintiff testified she doubted she could lift ten pounds due to shoulder pain; she could sit with a change in position every 20 to 30 minutes, could stand 20 minutes and walk less than two blocks. (Tr. 15.) She also testified she had problems with gripping and handling. (Tr. 16.) She reported she had problems being around people and suffered anxiety attacks. (Tr. 19.) Plaintiff has a significant history of alcohol abuse. (Tr. 247.) She testified she recently started chemical dependency treatment and was attending AA meetings. She reported she has been diagnosed with hepatitis C, and will begin treatment after three more months of sobriety. (Tr. 21; Ct. Rec. 18 at 4.) At the hearing she stated she had been clean and sober for three months and had just started mental health treatment that day. (Tr. 17.) She stated she could not do her past work as a CNA because she cannot lift with her right arm and cannot

1  stand for required periods of time.

2  **ADMINISTRATIVE DECISION**

3  At step one, ALJ Chester found Plaintiff had not engaged in
4  substantial gainful activity during the relevant time. (Tr. 42.)
5  At step two, he found Plaintiff had the severe impairments of PCT,
6  diffuse arthralgias, major depressive disorder, alcohol abuse and
7  cannabis abuse. (*Id.*) At step three, he determined Plaintiff's
8  substance abuse disorder met the requirements of sections 12.09 and
9  12.04 of 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4
10  (Listings), and with the alcohol abuse disorder, Plaintiff was
11  disabled under the Listings. (Tr. 44-45.)

12  The ALJ proceeded to a second sequential evaluation without the
13  effects of alcohol addiction and found these remaining impairments
14  were severe but did not meet the Listings: PCT, diffuse arthralgias,
15  and depression. (Tr. 43.) At step four, the ALJ found Plaintiff
16  would have the residual functional capacity (RFC) to perform light
17  work in jobs with superficial contact with the general public. She
18  could climb stairs and ramps and balance, but would be limited to
19  occasional stooping, kneeling, crouching, crawling, and climbing
20  ropes, ladders or scaffolds. She could not do frequent handling or
21  feeling bilaterally. (Tr. 46.) Based on this RFC, without the
22  effects of alcohol addition, and considering VE testimony, the ALJ
23  found Plaintiff could perform her past relevant work as a fruit
24  sorter or food server. (Tr. 49.) ALJ Chester proceeded to step
25  five and found Plaintiff's RFC would not allow her to perform the
26  full range of light work, but as testified by the VE, there were
27  other jobs in the national economy that she could perform, such as

28

housekeeper, laundry worker, and bakery worker.   (Tr. 49.)   He concluded substance abuse was a contributing factor to the determination of disability, and therefore she is not considered disabled under the Social Security Act.   (Tr. 50.)

### STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

### SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits.  42 U.S.C. § 423(a)(1)(D).  A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Such an impairment must result

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 4

from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).   The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).   "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).   This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.   If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).   If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he: (1) considered the effects of her alcohol addiction and found it was a contributing factor material to her disability; (2) improperly rejected medical opinions regarding her mental impairments; (3) improperly discounted her subjective testimony; (4) improperly discounted the testimony of her step-father; and (5) relied on VE testimony at steps four and five. (Ct. Rec. 18 at 9-19.)

**DISCUSSION**

**A.   Sequential Evaluation in the Context of Substance Addiction**

The Contract with America Advancement Act of 1996 (CAAA) amended the Social Security Act, providing that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Special statutes and regulations govern disability claims that involve substance abuse.

Under the Regulations implemented by the Commissioner, the ALJ must follow a specific analysis that incorporates the sequential evaluation discussed above. 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ must conduct the first five-step inquiry without attempting to determine the impact of substance abuse/addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, the claimant is not entitled to benefits, and there is no need to proceed with further analysis. *Id.* If the ALJ finds the claimant

disabled, and there is evidence of substance addiction, the ALJ should proceed under the sequential evaluation and §§ 404.1535 or 416.935 to determine if the claimant would still be disabled absent the substance addiction. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).   If found disabled with the effects of substance addiction, it is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).   As stated by the *Parra* court, a drug-addicted claimant "who presents inconclusive evidence of materiality has no incentive to stop [abusing drugs], because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated." *Id*.   Thus, through the CAAA, Congress seeks "to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." *Ball v. Massanari*, 254 F.3d at 817, 824 (9th Cir. 2001).

Plaintiff argues the ALJ did not evaluate her claim as required by *Parra*.   She correctly asserts that the ALJ is required to "first conduct the five step process to determine whether a claimant s disabled and then must determine which of claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol." (Ct. Rec. 18 at 10.)   This is what ALJ Chester did.   As required by the 20 C.F.R. § 416.935 and *Bustamante*, he conducted two sequential evaluations, considering Plaintiff's impairments with and without the effects of her long history of alcohol abuse and addiction. (Tr. 42-46.)

### 1.   First Sequential Evaluation

At step two of the first sequential evaluation, the ALJ found

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 7

Plaintiff had severe mental impairments of alcohol and cannabis abuse and "major depressive disorder."  Tr. 42.)  At step three he determined they met the Listings for §§ 12.09 (substance addiction) and 12.04 (affective disorders), and she was therefore disabled. (Tr. 45.)

The Ninth Circuit has held explicitly that where disability is established with the effects of substance addiction, the "claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor to [her] disability." *Parra,* 481 F.3d at 748. Thus, if there is no evidence of disabling impairments without the effects of alcohol abuse, Plaintiff is not entitled to benefits. *Id*.

Although she does not challenge the finding of disabling alcohol addiction, Plaintiff argues the evidence shows she has disabling mental limitations without the effects of her alcohol addiction.  Specifically, she states the ALJ did not give proper weight to the opinions of Julie Rickard, Ph.D., Thomas Rowe, Ph.D., and James Goodwin, Psy.D., in his second sequential evaluation. (Ct. Rec. 18 at 9-10.)  As found by the ALJ during the first sequential evaluation, these assessments were conducted in 2006 and 2007, while Plaintiff was actively abusing alcohol.  (Tr. 48.)  As noted by the ALJ, in November 2006, Dr. Goodwin specifically diagnosed alcohol abuse and depression, rule out cannabis abuse.  (Tr. 206).  He reported Plaintiff had a ten-year history of alcohol abuse and no substance abuse treatment.  He assessed marked and severe functional limitations, opined that Plaintiff needed a drug/alcohol evaluation and needed three to six months of treatment.  He also opined her

alcohol abuse "significantly exacerbates" her diagnosed depression. (Tr. 206-08).  It is noted on review that during her interview with Dr. Goodwin, Plaintiff identified alcohol abuse as a major problem in her life. (Tr. 203.)  Likewise, the ALJ noted Dr. Rickard's June 2007 letter on Plaintiff's behalf seeking financial assistance for medication.  The letter was written one week after Dr. Rickard's first appointment with Plaintiff, at which she diagnosed depression, symptoms of anxiety, suicidality and dysphoria.  She opined Plaintiff needed medication to overcome her mental problems, and was unable to work at the time. (Tr. 43, 262.)  However, other evidence in the record indicates clearly Dr. Rickard became aware of Plaintiff's alcohol addiction and its disabling effects.

For example, mental health records from Columbia Valley Health Center show Dr. Rickard saw Plaintiff in January 2008, and noted Plaintiff's alcohol abuse was not under control, she was threatening suicide, and medication was needed. (Tr. 283-84.)  Dr. Rickard, reported Plaintiff "continues to drink from the time she wakes up until bedtime." (Tr. 283.)  In an October 2008 clinic note, primary care provider, Eric Olson, M.D., referred Plaintiff to Dr. Rickard, noting Plaintiff was scheduled for inpatient alcohol abuse treatment in December 2008.  He opined she needed to achieve "sustained abstinence from alcohol" before receiving hepatitis C treatment. (Tr. 281.)  In December 2008, Dr. Rickard noted Plaintiff's self-reported detox date as November 19, 2008. (Tr. 288.)  Clinic notes from that period also show the attending nurse practitioner questioned the credibility of Plaintiff's self-reported sobriety during an office visit. (Tr. 278.)

Reports from Dr. Rowe also show Plaintiff was actively abusing alcohol at the time Dr. Rickard opined Plaintiff was unable to work.[1] In August 2007, Dr. Rowe administered a complete battery of psychological tests and diagnosed Plaintiff with dysthmia; alcohol abuse; major depression disorder, recurrent; and a learning disorder with math and spelling deficits. (Tr. 245, 249-52.) As found by the ALJ, Dr. Rowe reported Plaintiff was actively abusing alcohol and "essentially spent her entire day drinking beer." (Tr. 44, 247.) It is also noted on review that Plaintiff acknowledged her alcohol addiction in her interview with Dr. Rowe, and reported she had consumed ten to twelve beers daily for the past ten years. (Tr. 247.) According to Dr. Rowe, Plaintiff admitted "with all the beer she was drinking the [anti-depressant] medication really was not providing relief to her depression and so it was discontinued." (Tr. 253.) Significantly, Dr. Rowe opined that Plaintiff would not be amenable to treatment with medication until after she went through alcohol detox and treatment. (*Id.*) He found she was alcohol dependent and "at least moderately depressed." (*Id.*) He opined she should be sober for six months before she would be sufficiently responsible to manage her money. (*Id.*)

The ALJ's consideration of medical evidence from Drs. Rowe,

---

[1] At the January 15, 2009, hearing, Plaintiff testified she had just started seeing Dr. Rickard again for mental health treatment. (Tr. 17.) When asked how often she saw Dr. Rickard, she reported she had not seen her since she quit drinking, and explained Dr. Rickard said "when I quit drinking to come back and it'll be better." (*Id.*)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 10

Rickard and Goodwin is without error. Because the reports clearly indicate Plaintiff was abusing alcohol at the time, and medical providers opined the excessive use of alcohol has exacerbating her mental problems and her PCT, their opinions were properly credited during the first sequential evaluation. (Tr. 207, 252-53, 258.) These credited medical opinions support unequivocally the ALJ's conclusion that Plaintiff's depression and alcohol abuse meet the Listings under §§ 12.09 (substance addiction) and 12.04 (depressive disorder).[2] (Tr. 44.)

**2.   Second Sequential Evaluation**

The ALJ proceeded to the second evaluation as required by *Bustamante,* and found Plaintiff's depressive disorder was severe, but did not meet the Listing. (Tr. 46.) Plaintiff appears to argue she also has severe impairments of dysthymia and disorder of written expression and mathematics that, without the effects of alcohol abuse, are disabling. She relies on the limitations assessed by Drs. Rickard, Rowe and Goodwin, who explicitly noted Plaintiff's active abuse of alcohol. (Ct. Rec. 19 at 10-11.) Therefore, the ALJ did not err in giving little weight to these limitations in his evaluation of impairments without the effects of alcohol addiction. 20 C.F.R. § 416.935; *Bustamante*, 262 F.3d at 955.

---

[2] Other evidence indicates she was actively abusing alcohol during the relevant period. For example, in November 2006, Plaintiff was found intoxicated in the street by police and taken to Central Washington Hospital. (Tr. 192-93.) Emergency room personnel noted "toxic effects of alcohol" and suicide ideation in the triage report. (Tr. 192.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 11

### 3.   Plaintiff's Burden of Proof

Although the ALJ must consider evidence of remaining impairments without the effects of alcohol addiction, under *Parra*, the burden is shifted in the second sequential evaluation to Plaintiff to show that alcohol addiction is not a contributing factor material to her disability. Plaintiff has presented no medical evidence that her mental impairments are disabling without the effects of alcohol abuse. She presents no records of abstinence or alcohol addiction treatment during the claimed period of disability. On the contrary, she testified at the hearing that she had started mental health treatment the day of the hearing, and had been abstinent from alcohol for three months.[3]

There is nothing in the record to show Plaintiff's mental impairments are irreversible with an extended period of abstinence. Thus, she has not met her burden to show that alcohol abuse is not a contributing factor to her disabling mental impairments. *See Parra*, 481 F.3d at 750. The ALJ's application of the two step sequential evaluation required when substance addiction is a factor is without error.

---

[3] Assuming this testimony is accurate, Plaintiff has not met the durational requirement for a disability. 20 C.F.R. § 416.905. For an impairment to be meet or equal a listing, the impairment must last or be expected to last for a continuous period of 12 months. The record should document all pertinent symptoms, signs and laboratory findings as well as prescribed treatment, and the response to treatment in terms of changes in symptoms. *SSR* 82-52 (Documentation).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 12

**B.    Credibility**

Although resolving questions of credibility are functions solely of the Commissioner, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), when the adjudicator finds a claimant's statements regarding the severity of impairments and limitations are not credible, he or she must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's allegations. *Richardson,* 402 U.S. at 400; *Thomas v. Barnhart,* 278 F.3d 947, 958-59 (9th Cir. 2002); *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc); *Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir. 1989). To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d, 595, 599 (9th Cir. 1999) (*quoting Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). If there is no affirmative evidence of malingering, the reasons must be "clear and convincing." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995). "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of [disabling symptoms]." *Bunnell,* 947 F.2d at 345.

In the second sequential evaluation, the ALJ found Plaintiff's remaining impairments could reasonably cause her alleged symptoms, but found her statements were not entirely credible. (Tr. 47.) Referencing specific evidence in the record to support his findings, the ALJ gave numerous, specific reasons for discounting her

subjective complaints. (Tr. 47-48.) He found her statements were not consistent with the medical evidence and none of her providers stated her physical problems precluded employment. Other inconsistencies noted were: she stopped taking care of her grandchildren for economic rather than health reasons; her claimed inability to be around people was not so severe as to preclude her recent participation in alcohol addiction treatment; and her statements about her ability to perform household chores and take care of her grandchildren were inconsistent with the report from her stepfather. These are "clear and convincing" reasons to discount a claimant's statements. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Thomas*, 278 F.3d at 958-59.

In addition, the record shows Plaintiff reported successful treatment for her PCT and intermittent problems when exposed to sunlight; examining physicians noted inactive PCT, and assessed mild to moderate problems with her back. (Tr. 175-76, 259.) Further support of the ALJ's credibility findings is Plaintiff's failure to pursue and comply with treatment recommendations. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Dr. Rowe reported Plaintiff knew alcohol consumption was impeding treatment for her depression, but she quit the medication instead of abstaining or seeking alcohol abuse treatment. (Tr. 253.) As stated by Plaintiff, Dr. Rickard told her she needed to stop drinking before her depression could be treated successfully. (Tr. 17.) Because the ALJ's credibility determination is reasonably supported by the evidence, it is affirmed.

**C.    Lay Testimony**

Plaintiff claims the ALJ improperly rejected the statements of her step-father, George Kelley, in his third-party witness statement dated February 2007 (Tr. 141-49.)    Plaintiff references only Mr. Kelley's statements that "a few years back [she had] nickel size blisters all over her hands and feet."    (Ct. Rec. 18 at 17; Tr. 148.)  An independent review of Mr. Kelley's statements indicates he observed this condition affected her ability to walk and use her hands.    He stated she did normal daily housework, and estimated she could lift 25 pounds, which is more than required of light work, walk 10 to 12 blocks, and pay attention for 10 minutes.    He indicated he had not observed any changes in her hobbies or interests since the blistering condition began.  (Tr. 141, 145-46.)

Lay witness testimony as to a claimant's symptoms or how impairments affect her ability to work is competent evidence and must be considered by the ALJ.    If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (*citing Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993).    ALJ Chester considered Mr. Kelley's statements and gave them little weight because he was not medically trained.    This is not a valid reason for ignoring lay testimony, because, by definition, a lay witness is not a medical professional.    Standing alone, Mr. Kelley's close relationship with Plaintiff is not a valid reason for disregarding his observations, although the Commissioner has advised it is a factor to consider in weighing the evidence.  *SSR* 06-3p.  Finally, the ALJ found Mr. Kelley's observations were not consistent with the medical evidence,

but did not identify specific inconsistencies.   The ALJ failed to give specific, germane reasons for discounting Mr. Kelley's statements.   *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).

Independent review shows Mr. Kelley's observations are relevant to the period when Plaintiff was actively abusing alcohol, which according to Dr. Barber, could contribute to the PCT symptoms. (Tr. 260.)   Even if Mr. Kelley's testimony is credited in the first sequential evaluation, it does not change the ALJ's second sequential evaluation in which he found Plaintiff not disabled "without the effects of alcohol abuse."   Therefore, the ALJ's error is harmless.   *Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995).   Mr. Kelley's observations in 2007 while Plaintiff was actively abusing alcohol are not relevant to the second sequential evaluation, and they do not support Plaintiff's claim that her disabling mental limitations would remain if she stopped abusing alcohol.   20 C.F.R. § 416.935.

**D.   Residual Functional Capacity**

Plaintiff argues the ALJ erred in the weight given to Dr. Brent Barber's opinion that she is capable of light work, and did not properly credit the opinion of Gary Gaffield, D.O., who endorsed a sedentary RFC.  (Ct. Rec. 18 at 13.)   She also claims limitations assessed by agency psychologist Eugene Kester, M.D., were "separate from any substance abuse," and the ALJ erred when he failed to explain how much weight was given Dr. Kester's RFC findings.  (Ct. Rec. 18 at 12.) These arguments are without merit.

The RFC determination represents the most a claimant can still

do despite his physical and mental limitations.    20 C.F.R. §§ 404.1545, 416.945.    The RFC assessment is not a "medical issue" under the Regulations; it is based on all relevant evidence in the record, not just medical evidence.    *Id.*    The RFC determination represents dispositive administrative findings regarding a claimant's ability to perform basic work and may direct the determination of disability.    20 C.F.R. § 416.946; *SSR* 96-5p. Because the RFC assessment is part of the sequential evaluation, critical to a finding of disability and eligibility for benefits, the final responsibility for determining a claimant's RFC rests with the Commissioner after consideration of the record in its entirety. *Id*.    When RFC findings and final determination reflect a rational interpretation of the evidence, the court may not substitute its judgment for that of the Commissioner.    *Tackett*, 180 F.3d at 1097.

    In assessing the RFC, an adjudicator must consider all medical evidence provided.    No special significance is given to a medical source opinion on the issues of RFC and disability, issues reserved to the Commissioner.    20 C.F.R. § 416.927(e); *SSR* 96-5p; *SSR* 96-2p. While a treating source opinion is never entitled to controlling weight, these opinions may never be ignored.    However, the ALJ need only explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).    Because Dr. Kester's opinions are consistent with the ALJ's RFC determination (*see* Tr. 242), and were credited in the Commissioner's decision (Tr. 48 (Exhibit 9F)), no further explanation of the weight given is required.

    Plaintiff claims the ALJ erred because he referred to Dr.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 17

Barber as a primary care physician; however, in this case, this is a distinction without a difference.   Both Dr. Gaffield and Dr. Barber are acceptable medical sources and examining physicians.   20 C.F.R. § 416.927(d).   Neither opinion is given special significance in the ALJ's RFC assessment.   *SSR* 96-5p.   If an examining doctor's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons.   *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).   If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence.   *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995).   Here, the ALJ rejected neither opinion.

As required by the Regulations, the ALJ considered Dr. Barber's March 2006 report, specifically noting that at the time of the examination, Plaintiff's PCT was controlled.   (Tr. 48.)   Dr. Barber's report also shows that Plaintiff stated she experienced discomfort primarily when her hands were exposed to sunlight. (Tr. 259.)   Dr. Barber also felt Plaintiff's alcohol consumption could contribute to her PCT. (Tr. 260.)   He indicated she was nonetheless capable of "light work" which was defined on the form report as "the ability to lift 20 pounds maximum and frequently lift and/or carry up to 10 pounds, and may require walking or standing up to six out of eight hours per day, or involve sitting most of the time with occasional pushing and pulling of arm and/or leg controls." (Tr. 257.)   This summary is supported by substantial evidence, including Mr. Kelley's statement that Plaintiff could lift about 25 pounds. (Tr. 146, 255-60.)

The ALJ then summarized Dr. Gaffield's assessment, dated November 9, 2006, eight months after Dr. Barber's exam. (Tr. 172-77.) As indicated by the ALJ, Dr. Gaffield found no significant physical problems and concluded Plaintiff "could perform work consistent with light work."[4] (Tr. 48.) Consistent with Dr. Barber's exam, Dr. Gaffield noted no symptomatic hand blistering typical of PCT patients. He observed mild back spasms and limited cervical motion, as well as bilateral hand grip weakness. He opined Plaintiff could walk, stand, and sit eight hours in an eight-hour workday, capacities which are consistent with light work. Nonetheless, he advised she carry no more than ten pounds occasionally and ten pounds frequently due to her grip weakness in her fingers and wrists. He also opined she was limited in manipulative activities to occasional activity due to weakness in both wrists. (Tr. 176.) These capacities are consistent with the ALJ's RFC findings that Plaintiff should not do frequent handling or feeling bilaterally, or perform a full range of light work. (Tr.

---

[4] The Social Security regulations define light work as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds. "Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs." *SSR* 83-10. Light work may also involve sitting most of the time, but with "some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work." *Id.*

46, 48-50.) However, they do not fit into the definition of sedentary work, as claimed by Plaintiff.[5]

Consistent with objective psychological testing results showing deficits in math and spelling, and problems with attention and concentration, the ALJ found Plaintiff could perform unskilled work,[6] limited to superficial contact with the public. (Tr. 27, 50; *see also* Tr. 242.) (Plaintiff limited to repetitive, non-complex tasks.)  The ALJ's RFC findings, without the effects of alcohol abuse, are a rational interpretation of the evidence in its entirety, and may not be disturbed.

**E.   Vocational Expert Testimony**

It is not uncommon in social security cases to find an individual's exertional capacity falls between two ranges.  When an exertional level falls between the light and sedentary ranges of work, and it is not clear how much an occupational base within a

---

[5] "Sedentary work" involves:

[L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files and small tools.  Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out he job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  Work performed primarily in a seated position entails no significant stooping.

*SSR* 83-10.  Good use of the hands and fingers for repetitive hand-finger actions is required generally in unskilled sedentary jobs. *Id*.

[6] Unskilled work requires little or no judgment, the ability to carry out simple instructions, and can be learned in a short period of time.  *See SSR* 85-15.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 20

range of work is eroded, the ALJ is advised to consult a vocational expert to determine if a significant number of jobs remain that the claimant can perform. *SSR* 83-12. Here, the ALJ properly consulted with the VE, who identified several light level jobs Plaintiff could perform with the identified mental and physical limitations.

Plaintiff argues the ALJ's reliance on VE testimony was error because he did not include all of her limitations. (Ct. Rec. 18 at 18.) However, as discussed above, the ALJ's credibility and RFC determinations are supported by substantial evidence. Further, Plaintiff has not shown her alleged inability to sustain employment would remain if she stopped abusing alcohol. The transcript of the hearing shows the ALJ included those limitations reasonably supported by the evidence, without the effects of alcohol, in his hypothetical question to the VE at steps four and five. (Tr. 26-27.) The VE's testimony is therefore supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ did not err in relying on this testimony in his step four and five findings.

**CONCLUSION**

The Commissioner's RFC and credibility determinations are supported by substantial evidence and are without legal error. Plaintiff has failed to demonstrate she would still be disabled in the absence of alcohol addiction. The ALJ's finding that substance addiction is a contributing factor material to Plaintiff's disability is without legal error and supported by substantial evidence. The ALJ did not err in denying Plaintiff's claim. Accordingly,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 21

1    **IT IS ORDERED:**

2    1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is

3    **DENIED.**

4    2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 20)** is

5    **GRANTED.**

6    The District Court Executive is directed to file this Order and

7    provide a copy to counsel for Plaintiff and Defendant. Judgment

8    shall be entered for Defendant and the file shall be **CLOSED.**

9    DATED August 5, 2010.

10

11                        S/ CYNTHIA IMBROGNO
                      UNITED STATES MAGISTRATE JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 22